**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JAIRO VARGAS, JR.,                                    :
50 T St., NW.,                                        :
Washington, DC 20001                                  :
                                                      :
                        Plaintiff,                    :
                                                      :
v.                                                    :    Civil Action No. 26-cv-1209
                                                      :
EQUIFAX INFORMATION SERVICES, LLC,                    :
                                                      :
    Serve:  Corporation Service Company               :
            1090 Vermont Ave. NW                      :
            Washington, DC 20005                      :
                                                      :
                                                      :
                        Defendant.                    :
_____ :

**CLASS ACTION COMPLAINT**

Plaintiff Jairo Vargas, Jr., by counsel, brings the following complaint against Defendant

Equifax Information Services, LLC ("Equifax"). In support thereof, Plaintiff states as follows:

**PRELIMINARY STATEMENT**

1.    More than fifty years ago, Congress determined that "[i]naccurate credit reports

directly impair the efficiency of the banking system, and unfair credit reporting methods

undermine the public confidence which is essential to the continued functioning of the banking

system." 15 U.S.C. § 1681(a)(1). Congress further determined that consumer reporting agencies

"have assumed a vital role in assembling and evaluating consumer credit," and there was "a need

to insure" that they "exercise their grave responsibilities with fairness, impartiality, and a respect

for the consumer's right to privacy." *Id*. at § 1681(a)(3)-(4).

2.    This case arises from an alleged violation of § 1681e(b) of the Fair Credit Reporting

Act, which requires consumer reporting agencies, such as Equifax, to follow "reasonable

procedures to assure maximum possible of accuracy" whenever they prepare a consumer report concerning an individual to whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high standard on consumer reporting agencies. *See, e.g., Burke v. De Info. Sols., Inc.*, 2011 WL 1085874, at \*4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b) and explaining that "'assure' means 'to make sure or certain: put beyond all doubt.' 'Maximum' means the 'greatest in quantity or highest degree attainable' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived . . .'" (internal citations omitted) (quoting Webster's Third New International Dictionary 133, 1396, 1771 (1993).

3.      This care arises because Equifax unreasonably reports individuals as "deceased" when, in fact, they are alive. When Plaintiff applied for a mortgage for a new home in March 2026, Equifax reported that Plaintiff was "deceased," and his "Onfile Death Date" was September 2010. This error occurred even though Equifax had other information in its system, such as an active credit history for Plaintiff, that made it apparent that he was alive. In other words, Equifax reported Plaintiff as having died in 2010, even though his credit report showed he had a current mortgage as of February 2026, an active and current automobile loan, multiple active and current credit cards, a rental agreement, and installment loans.

4.      These deceased indicators matter and materially impact credit decisions. For example, Equifax's website previously explained that a "death notice flags a person's credit reports as 'deceased – do not issue credit.'" Equifax, CREDIT AND DEBT AFTER DEATH: WHAT YOU NEED TO KNOW, https://www.equifax.com/personal/education/life-stages/credit-accounts-after-death. Consistent with this, on March 9, 2026, Plaintiff's loan officer sent him an email informing him that he "received your credit report," and "[e]verything looks good on Experian and Trans Union, but Equifax has marked you as deceased." The loan officer further instructed Plaintiff that they

needed to "change gears and go FHA instead of Conventional," but that option was "not nearly as attractive," and would result in paying "more over the life of the loan."

5.      Equifax could have prevented these inaccuracies and resulting harm by either checking the information against the Social Security Administration's Death Master File (a common procedure used by credit bureaus) or cross-referencing other information in the credit report, such as account data and ongoing payment activities. Equifax's failure to implement these simple and commonsense safeguards violated the FCRA's mandate that it "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

6.      Because the putative class members were subject to the same procedures and suffered the same overarching harm, Plaintiff's § 1681e(b) claims are capable and appropriate for class resolution.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over the Plaintiff's claim because it arises under federal law. 15 U.S.C. § 1331, which allows FCRA claims to be brought in any appropriate court of competent jurisdiction.

8.      Venue is proper in this Court under 28 U.S.C. § 1331(b)(1) because Equifax is a resident of this District for the purposes of venue as provided in 28 U.S.C. § 1331(c)(2) because it is subject to personal jurisdiction in this action in this District.

9.      Venue is also proper in this Court under 28 U.S.C. § 1331(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, which is the place where Plaintiff resides, applied for his mortgage loan, and suffered his damages.

**PARTIES**

10.     Plaintiff Jairo Vargas, Jr., is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

11.     Equifax is a foreign limited liability company doing business in the District of Columbia with a principal place of business in Atlanta, Georgia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

**FACTUAL BACKGROUND**

**A.     Equifax reports that the Plaintiff is deceased.**

12.     On March 8, 2026, Plaintiff submitted a uniform residential mortgage application with Cross Country Mortgage, LLC.

13.     Hoping to build equity in a property rather than continuing to rent, Plaintiff's application was for a mortgage loan for a primary residence.

14.     After Plaintiff submitted his mortgage application, Cross Country Mortgage obtained a tri-merge credit report, which is a single document that consolidates a person's credit reports from all three major bureaus (Equifax, Experian, and Trans Union) into a single report.

15.     The tri-merge credit report contained materially inaccurate information furnished by Equifax.

16.     In a section entitled "Miscellaneous Information," Equifax reported that Plaintiff was "deceased," and Equifax had an "Onfile Death Date" of September 2010 for Plaintiff.

17.     Similarly, in the credit score section of the report, Equifax did not provide a credit score for Plaintiff. Instead, the report states that the score was not provided by Equifax "due to the presence of a deceased notation."

18.     On March 9, 2026, Plaintiff's loan officer with Cross Country Mortgage sent him an email informing him of the problem with his Equifax report.

19.     In this email, the loan officer wrote: "I received your credit report. Everything looks good on Experian and TransUnion, but Equifax has you marked as deceased."

20.     Because the deceased reporting, the loan officer further explained: "we need to change gears and go FHA instead of Conventional as we have been planning. This works to purchase the home, but the FHA loan is not nearly as attractive as Conventional- with higher UpFront and annual (paid monthly) Mortgage Insurance Premiums, compared to Conventional - so you will pay more over the life of the loan."

**B.     Equifax's procedures were unreasonable.**

21.     Although Plaintiff does not know the full extent of Equifax's procedures at this time, it is clear that Equifax falsely portrayed Plaintiffs as deceased because Equifax lacked an adequate procedure to prevent such obviously inaccurate reporting.

22.     Equifax's procedures were inadequate because they failed to flag—and even consider—contradictory data that was in Equifax's possession.

23.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has issued an advisory opinion "to highlight that a consumer reporting agency that does not implement reasonable internal controls to prevent the inclusion of facially false data, including logically inconsistent information," in credit reports "is not using reasonable procedures to assure maximum possible accuracy" as required by the FCRA. CFPB Advisory Opinion on Fair Credit Reporting; Facially False Data, at 9, October 20, 2022.[1]

---

[1] Available at https://files.consumerfinance.gov/f/documents/cfpb_fair-credit-reporting-facially-false-data_advisory-opinion_2022-10.pdf.

24.    The advisory opinion of CFPB—the primary enforcer of the FCRA— instructs credit bureaus that:

> Information about consumer accounts that is plainly inconsistent with other reported information, such that one piece of information must be inaccurate – for example, if every other tradeline is reporting ongoing payment activity, while one tradeline contains a "deceased" indicator, reasonable policies and procedures should identify the inconsistency and the consumer reporting agency should prevent the inclusion of the inaccurate information in consumer reports it generates.

*Id.*

25.    This advisory opinion (and common sense) makes clear that a consumer reporting agency violates its duty under § 1681e(b) when it reports people as dead who are obviously alive.

26.    Here, Equifax reported Plaintiff as "deceased" even though other credit information reported by Equifax showed he was alive.

27.    For example, in Plaintiff's credit history, Equifax reported a mortgage loan with Central Loan Administration, which was opened in August 2023, *i.e.*, 13 years after Plaintiff died according to Equifax's "Onfile Death Date" in the other section of the report.

28.    Equifax's own reporting further showed that Plaintiff was current on the mortgage loan with Central Loan Administration, including a payment as recent as February 2026, *i.e.*, just one month prior to Plaintiff's mortgage application with Cross Country Mortgage.

29.    In addition to the Central Loan Administration account, Plaintiff had almost a dozen other accounts on his credit report with Equifax that should have put it on notice of the inaccuracy of its report, including: (1) a loan with Fifth Third Bank opened in August 2024; (2) a credit card with Chase opened in March 2024; (3) a credit card with Robinhood opened in August 2024; (4) a secured credit card with Stride Financial opened February 2023; (5) a credit card with Citibank opened in December 2017; (6) a rental agreement with Pinata opened in July 2021; (7) another

rental agreement with Rent Reporters opened in September 2018; (8) another credit card with Chase opened in May 2024; and (9) another credit card with Chase opened in October 2023.

30.     In addition to these accounts, Equifax also reported Plaintiff's current address as of April 2022, *i.e.*, 12 years after Plaintiff died according to Equifax's "Onfile Death Date" in the other section of the report.

31.     Equifax lacked adequate procedures to flag any of these anomalies, much less assure with maximum accuracy that Plaintiff and others would not be wrongly portrayed as deceased and without a credit score.

32.     Equifax's procedures were also unreasonable because it appears that Equifax did not cross-reference its deceased reporting or credit files with the Social Security Administration's Death Master File ("DMF").

33.     The DMF is a computer database file made available by the Social Security Administration, which collects death information from many sources, such as state and federal agencies.

34.     Among other things, the DMF includes the name, date of birth, date of death, and social security number of a decedent.

35.     If Equifax had cross-referenced its reporting or files with the DMF (a step taken by some consumer reporting agencies), it could have easily prevented the inclusion of the inaccurate information about Plaintiff, whose information should not be a match in the DMF.

36.     Additionally, the FCRA provides that consumer reporting agencies may not furnish "a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of" the FCRA. 15 U.S.C. § 1681e(a).

37.     Section 1681b, in relevant part, only allows a consumer reporting agency to furnish a consumer report to a person if it has reason to believe it intends to use the report in connection with a credit transaction, employment, or insurance.

38.     Here, Equifax could not have reasonably believe that CrossCountry Mortgage intended to use the report in connection with a credit transaction if Plaintiff was deceased since September 2010.

39.     Equifax refused to provide a credit score, but it provided credit information to CrossCountry Mortgage.

40.     In other words, Equifax should have either reported that Plaintiff was deceased or provided the credit information with a credit score, but not both.

41.     It was a violation of § 1681e(a) to furnish a consumer report with credit information if Equifax also reported that the consumer was deceased.

**C.     Equifax's violations of the FCRA were willful.**

42.     The Supreme Court has established that willful violations of the FCRA include both reckless and/or intentional violations. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007).

43.     A company acts recklessly if it acts in the face of an unjustifiably high risk of violating the law that is either known or so obvious that it should be known.

44.     Here, Equifax has taken an unjustifiably high risk of violating the law that is either known or so obvious that it should be known.

45.     By way of example, there is ample authority and case law that placed Equifax on notice of the dangers of its partial matching procedures.

46.     One such case was *Sheffer v. Experian Info. Sols., Inc.*, 2003 WL 21710573, at \*1 (E.D. Pa. July 24, 2003), where the plaintiff sued several credit reporting agencies, including Equifax, after he was inaccurately reported as deceased.

47.     There, the United States District Court for Eastern District of Pennsylvania rejected Equifax's motion for partial summary judgment on the issue of willfulness. *Id*. at \*3 ("Equifax and Trans Union contend that Plaintiff cannot show 'willfulness' under the FCRA. I disagree with both Defendants.").

48.     Among other things, the court reached this conclusion because "report indicated both that Plaintiff was born in 1969 and that the account was opened in 1965. Furthermore, the Sears account was the only account among approximately two dozen that included the 'deceased' notation. These inconsistencies provide a basis from which a jury could infer that the procedures were unreasonable." *Id*.

49.     Other decisions have reached similar conclusions, including cases involving Equifax. *See, e.g.*, *Gohman v. Equifax Info. Servs., LLC*, 395 F. Supp. 2d 822, 827 (D. Minn. 2005) ("Plaintiff's deceased status was caused by a standard notation that was plainly inconsistent with other information in her file. Such inconsistencies could lead a jury to infer that Equifax's failure to detect them was unreasonable."); *McKeown v. Sears Roebuck & Co.*, 335 F.Supp.2d 917, 930–31 (W.D. Wis. 2004) (summary judgment not warranted where statement consumer was deceased was inconsistent with other accounts).

50.     In addition to these authorities, Equifax's procedures are contrary to the guidance and advisory opinions of government regulators, such as the CFPB.

51.     As detailed above, the CFPB has clearly instructed consumer reporting agencies that:

Information about consumer accounts that is plainly inconsistent with other reported information, such that one piece of information must be inaccurate – for example, if every other tradeline is reporting ongoing payment activity, while one tradeline contains a "deceased" indicator, reasonable policies and procedures should identify the inconsistency and the consumer reporting agency should prevent the inclusion of the inaccurate information in consumer reports it generates.

CFPB, *Advisory Opinion on Fair Credit Reporting; Facially False Data*, 9 (Oct. 20, 2022).

52.    The CFPB's interpretation did not break new ground, but is similar to the guidance from the Federal Trade Commission, the previous enforcer of the FCRA, who explained years ago that reasonable procedures to assure maximum possibly accuracy include "establish[ing] procedures to avoid reporting information from its furnishers that appears implausible or inconsistent." FTC, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Report with Summary of Interpretations*, 67 (July 2011).

53.    A credit reporting agency, the FTC explained, "must maintain procedures to avoid reporting information with obvious logical inconsistencies, such as a credit account opened when the consumer was known to be a minor" or, by analogy, where a consumer is reported as deceased even though she is alive. *See id*. at 68.

54.    Evidence of other consumers lodging similar complaints placed Equifax on further notice of the inadequacy of its procedures. *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) ("There is no evidence that other consumers have lodged complaints similar to Dalton's against CAI."); *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (holding that the plaintiff failed to establish willfulness where the plaintiff "presented no evidence that anyone had lodged similar complaints against [the defendant]"); *Holmes v. Telecheck Intern., Inc.*, 556 F. Supp. 2d 819, 847 (M.D. Tenn. 2008) ("Proof of a pattern and practice is relevant and is one way to establish willfulness" under the FCRA).

55.    Equifax has not only received consumer disputes regarding its deceased reporting, but it has been sued on dozens of occasions, including a previous lawsuit filed by Plaintiff when Equifax inaccurately reported him as deceased. *See Vargas, Jr., v. Equifax Information Servs., LLC*, Case No. 1:23-cv-02077-CKK (D.C. 2023); *see also Sheldon v. Equifax Info. Sols., Inc.*, No. CIV.A. 08-5193, 2010 WL 3768362 (E.D. Pa. Sept. 28, 2010); *Aslani v. Corelogic Credco, LLC*, No. 1:13-cv-2635-CC-LTW, 2014 WL 12861199, at *1 (N.D. Ga. Aug. 18, 2014), *report and recommendation adopted,* No. 1:13-cv-2635-CC-LTW, 2014 WL 12861361 (N.D. Ga. Sept. 8, 2014); *Oxfurth v. Equifax Info. Sols., Inc.*, 1:14-cv-123 (E.D. Va.); *Boris v. Experian Info. Sols., Inc.*, 7 :16-cv-206 (W.D. Va.); *Pang v. Credit Plus, Inc.*, 1 :20-cv-122 (D. Md.); *Furmon v. Capital One Bank USA, N.A.*, 1:22-cv-249 (E.D. Va.); *Baer v. Equifax Information Services, LLC*, 3:21-cv-47 (W.D. Va.); *Gonzalez v. Wells Fargo Bank, N.A.*, 8:21-cv-3083 (D. Md.); *McAfee v. Synchrony Financial,* 3:22-cv-261 (E.D. Va.); *Verdeaux v. Capital One Bank USA. N.A.*, 1:22-cv-7 (E.D. Va.); *Dunnivan v. Capital One Bank USA, N.A.*, 1:22-cv-1191 (E.D. Va.).

56.    These authorities, including direct cases against Equifax, should have made it apparent that it needed to adjust its procedures so it would not include deceased information in consumers' credit reports where, as here, there was ongoing payment activity and other information in its possession showing the consumer is alive.

57.    Additionally, Equifax knows the significant consequences of inaccurate reporting someone as deceased. As its own website previously explained: "death notice flags a person's credit reports as 'deceased – do not issue credit.'" Equifax, CREDIT AND DEBT AFTER DEATH: WHAT YOU NEED TO KNOW.

58.     Despite this recognition, Equifax has not changed its procedures to ensure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

## COUNT I – FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### Class Claim

59.     Plaintiff restates and incorporates the previous allegations as if set forth at length herein.

60.     Under Fed. R. Civ. P. 23, Plaintiff brings this action for himself and on behalf of the following class:

> All natural persons residing in the United States who: (a) were the subject of a report sold by Equifax; (b) in the five years predating the filing of this Complaint and continuing through the date on which the class list is prepared; (c) which contained a deceased indicator or Onfile Death Date; (d) where there was also ongoing payment activities on a tradeline; (e) after the addition of the deceased indicator or Onfile Death Date.

61.     Under Fed. R. Civ. P. 23, Plaintiff brings this action for himself and on behalf of the following subclass:

> All natural persons residing in the United States who: (a) were the subject of a report sold by Equifax; (b) in the five years predating the filing of this Complaint and continuing through the date on which the class list is prepared; (c) which contained a deceased indicator or Onfile Death Date; (d) where the subject of the report's social security number did not match a social security number on the Master Death File.

62.     **<u>Numerosity.</u>** Plaintiff estimates that the class is so numerous that joinder of all members is impractical.  The class members' names and addresses are identifiable through documents maintained by Equifax and the class members may be notified of the pendency of this action by published, mailed notice, or both.

63. **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether Equifax had reasonable procedures designed to avoid the inclusion of deceased indicator when there was ongoing payment activities on the consumer's file; (2) whether Equifax's conduct violated the FCRA; (3) whether Equifax's conduct was willful; and (4) what is the proper amount of damages for Plaintiff and class members who were the subject of Equifax's inaccurate reporting.

64. **Typicality.** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Plaintiff's claims are also based on the same facts and legal theories as each of the class members' claims.

65. **Adequacy of Representation.** Plaintiff is also an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in class action litigation and intend, with their counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will adequately protect the class members' interests. Neither Plaintiff nor his counsel have any interest that might conflict with their vigorous pursuit of this action.

66. **Superiority.** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for individual class members to effectively redress the wrongs done to them.

Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Equifax's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

67.     As described above, Equifax unreasonably reports individuals as "deceased" when, in fact, they are alive.

68.     Equifax could have prevented these inaccuracies and resulting harm by either cross-referencing other information in the credit report, such as account data and ongoing payment activities and/or checking the information against the Death Master File, which is a common procedure used by credit bureaus.

69.     Equifax's failure to implement these simple and commonsense safeguards violated the FCRA's mandate that it "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

70.     Because the putative class members were subject to the same procedures and suffered the same overarching harm, Plaintiff's § 1681e(b) claims are capable and appropriate for class resolution.

71.     Plaintiff and each putative class member suffered actual and concrete harms and injuries as a result of Equifax's violation.

72.     A credit report that states a consumer is deceased effectively declares the consumer who is the subject of that report ineligible for credit or consumers are offered credit on less favorable terms, such as the Plaintiff.

73. This is because creditors do not want to issue credit to consumers who are deceased as it would be impossible and unexpected to receive payment on those obligations—let alone mutual consent to the credit terms.

74. Indeed, even Equifax itself indicates that the reason to identify a consumer as deceased is to "flag[] a person's credit reports as 'deceased – do not issue credit.'" Equifax, CREDIT AND DEBT AFTER DEATH: WHAT YOU NEED TO KNOW, available at: https://www.equifax.com/personal/education/life-stages/articles/-/learn/credit-accounts-after-death/.

75. Any indication on a report that a consumer is deceased, and the resulting lack of a credit score, is harmful to consumers because they are key pieces of information that are relied on by creditors in deciding whether to grant consumers credit, and if so, on what term.

76. Equifax's conduct was willful, rendering it liable for statutory and punitive damages under 15 U.S.C. §1681n.

77. In the alternative (or if class certification is denied), Plaintiff alleges that Equifax was negligent, entitling him to recovery under 15 U.S.C. §1681o.

78. Plaintiff is also entitled to recover costs and attorneys' fees under 15 U.S.C. §1681n and §1681o.

**COUNT II – FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(a)**
**Class Claim**

79. Plaintiff restates and incorporates the previous allegations as if set forth at length herein.

80. Under Fed. R. Civ. P. 23, Plaintiff brings this action for himself and on behalf of the following class:

All natural persons residing in the United States who: (a) were the subject of a report sold by Equifax; (b) in the five years predating the filing of this Complaint and continuing through the date on which the class list is prepared; (c) which contained a deceased indicator or Onfile Death Date; (d) where the report also included ongoing payment activities on at least one tradeline; and (e) where the subject of the report's social security number did not match a social security number on the Master Death File.

81.    **Numerosity.** Plaintiff estimates that the class is so numerous that joinder of all members is impractical.  The class members' names and addresses are identifiable through documents maintained by Equifax and the class members may be notified of the pendency of this action by published, mailed notice, or both.

82.    **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members.  These common questions predominate over the questions affecting only individual class members.  The common questions include: (1) whether Equifax had reasonable procedures designed to avoid the inclusion of deceased indicator when there was ongoing payment activities on the consumer's file;  (2) whether Equifax's conduct violated the FCRA; (3) whether Equifax's conduct was willful; and (4) what is the proper amount of damages for Plaintiff and class members who were the subject of Equifax's inaccurate reporting.

83.    **Typicality.** Plaintiff's claims are typical of the claims of each putative class member.  Plaintiff is entitled to relief under the same causes of action as the other putative class members.  Plaintiff's claims are also based on the same facts and legal theories as each of the class members' claims.

84.    **Adequacy of Representation.** Plaintiff is also an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the other putative class members.  Plaintiff has retained counsel competent and experienced in class

action litigation and intend, with their counsel, to continue to prosecute the action vigorously. Plaintiff and his counsel will adequately protect the class members' interests. Neither Plaintiff nor his counsel have any interest that might conflict with their vigorous pursuit of this action.

85.    **Superiority.** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Equifax's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

86.    As described above, Equifax unreasonably reports individuals as "deceased" when, in fact, they are alive.

87.    Even though Equifax reports individuals as deceased, it nonetheless includes credit information in the very same report.

88.    Equifax's conduct is in violation of the FCRA, which provides that consumer reporting agencies may not furnish "a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of" the FCRA. 15 U.S.C. § 1681e(a).

89.    Here, Equifax could not have reasonably believed that CrossCountry Mortgage intended to use the report in connection with a credit transaction if Plaintiff was deceased since September 2010.

90.    Equifax should have either reported that Plaintiff was deceased or provided the credit information, but not both.

91.    It was a violation of § 1681e(a) to furnish a consumer report with a consumer report with credit information if Equifax also reported that the consumer was deceased.

92.    Because the putative class members were subject to the same procedures and suffered the same overarching harm, Plaintiff's § 1681e(a) claims are capable and appropriate for class resolution.

93.    Plaintiff and each putative class member suffered actual and concrete harms and injuries as a result of Equifax's violation.

94.    A credit report that states a consumer is deceased effectively declares the consumer who is the subject of that report ineligible for credit or consumers are offered credit on less favorable terms, such as the Plaintiff.

95.    Despite declaring the consumer as deceased, Equifax also violated Plaintiff and other consumer's right to privacy of their credit information.

96.    Equifax's conduct was willful, rendering it liable for statutory and punitive damages under 15 U.S.C. §1681n.

97.    In the alternative (or if class certification is denied), Plaintiff alleges that Equifax was negligent, entitling him to recovery under 15 U.S.C. §1681o.

98.    Plaintiff is also entitled to recover costs and attorneys' fees under 15 U.S.C. §1681n and §1681o.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of himself and the putative class members, move for class certification and for statutory, actual, and punitive damages as pleaded, and his attorneys' fees and costs against Equifax; for prejudgment and post-judgment interest at the legal rate, and any other relief the Court considers appropriate.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL**.

Respectfully submitted,
**JAIRO VARGAS, JR.**

By:  */s/ Kristi C. Kelly*
                    Counsel

Kristi C. Kelly, DC No. 974872
Casey S. Nash, DC No. 1028868
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiff*